USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/24/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NETSOC, LLC,

          Plaintiff,

v.

OATH INC.,

          Defendant.

MEMORANDUM OPINION & ORDER

No. 18-CV-12267 (RA)

RONNIE ABRAMS, United States District Judge:

Plaintiff NetSoc, LLC filed claims for patent infringement against Defendants Chegg Inc., LinkedIn Corp., Quora Inc., and Oath Inc., in four separate actions that were consolidated through claim construction. *See* Dkt. 26.[1] The actions against Quora and LinkedIn were transferred to the Northern District of California on October 2, 2019 and January 14, 2020, respectively. *See* No. 18-CV-12250, Dkt. 72; No. 18-CV-12215, Dkt. 73. The action against Chegg was dismissed on collateral estoppel grounds on January 13, 2020. *See* No. 18-CV-10262, Dkt. 111. Now before the Court is Defendant Oath's motion to dismiss, also on grounds of collateral estoppel. For the following reasons, the motion is granted and this action is dismissed as well.

---

[1] Unless otherwise noted, this opinion cites submissions filed on the docket in *NetSoc, LLC v. Oath Inc.*, No. 18-CV-12267.

## BACKGROUND[2]

### I. Procedural History

On December 27, 2018, Plaintiff filed this action, naming Yahoo! Inc. as the sole defendant. Plaintiff sought "relief from patent infringement of the claims of U.S. Patent No. 9,978,107" (the "'107 Patent"), alleging that "Yahoo maintains, operates, and administers a website at www.yahoo.com that infringes one or more claims of the '107 patent." Dkt. 1, Compl. at 1, ¶ 9. The complaint described the '107 Patent as "relat[ing] generally to a method and system for establishing and using a social network to facilitate people in life issues." *Id.* ¶ 8.

On March 12, 2019, Plaintiff filed an amended complaint (the "FAC"). Plaintiff again sought "relief from patent infringement of the claims of U.S. Patent No. 9,978,107." Dkt. 22, Compl. at 1, ¶ 9. The FAC, however, named Oath – rather than Yahoo! – as the sole defendant, alleging that "Oath maintains, operates, and administers a website at www.Oath.com that infringes one or more claims of the '107 patent."[3] *Id.* ¶ 9. On March 26, Oath filed a motion to dismiss the FAC on several grounds, including that the '107 Patent claims were directed to patent-ineligible subject matter under 35 U.S.C. § 101. *See* Dkt. 28. Shortly thereafter, the Court consolidated this action with the three other patent actions recently filed by Plaintiff in this district, *see* Dkt. 26, and, on July 3, granted a stay of discovery in the cases pending resolution of several motions, including Oath's motion to dismiss the FAC, *see* Dkt. 42.

On July 10, without either seeking permission from or giving notice to the Court, Plaintiff filed a second amended complaint (the "SAC"). *See* Dkt. 44. In contrast to its prior complaints,

---

[2] The facts in this section are drawn from the three complaints that Plaintiff filed. *See* Dkt. 1, 22, 44. The Court accepts Plaintiff's allegations as true for purposes of this motion. *See Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725 (JPO), 2018 WL 1478047, at *1 (S.D.N.Y. Mar. 26, 2018).

[3] On July 29, 2019, the case caption was amended to include Oath instead of Yahoo!. *See* Dkt. 53.

the SAC now seeks "relief from patent infringement of the claims of U.S. Patent No. 9,218,591" (the "'591 Patent"). *Id.* at 1. While Plaintiff asserted the infringement of a different patent, Plaintiff made no other changes to the complaint. For instance, Plaintiff described the '591 Patent as the FAC described the '107 Patent: "relat[ing] generally to a method and system for establishing and using a social network to facilitate people in life issues." *Id.* ¶ 8. After Oath objected to the filing of the SAC, Plaintiff responded by explaining that "the '107 patent is a continuation application of the application that issues as the '591 patent" and that the amendment is "no surprise as both the '107 patent and the '591 patent are highly related."[4] Dkt. 46; *see also id.* (explaining that there is "extreme similarity in the independent Claim 1 of the '107 patent as compared to the '591 patent").

Shortly after filing the SAC, Plaintiff "inform[ed] the Court of a decision in a related case that materially impacts several of the cases before this Court[.]" Dkt. 50. In the United States District Court of the Northern District of Texas, Plaintiff had brought similar patent infringement claims involving the '107 Patent against several other defendants. *See NetSoc, LLC v. Match Grp., LLC et al.*, No. 18-CV-1809 (N.D. Tex. July 13, 2018). On July 22, 2019, the Northern District of Texas concluded that Plaintiff's "patent claims are directed to only ineligible subject matter under 35 U.S.C. § 101" and granted the defendants' motion to dismiss. *NetSoc, LLC v. Match Grp., LLC et al.*, No. 18-CV-1809, 2019 WL 3304704, at *1 (N.D. Tex. July 22, 2019). The court first summarized the '107 Patent claims as "(1) maintaining a list of participants, (2) presenting a user with a list of other participants based on selection criteria, (3) allowing the user to have limited contact with chosen participants, and (4) updating the rating of a participant based on tracked response times." *Id.* at *2. It then explained that these claims failed the two-

---

[4] On September 3, 2019, the parties stipulated, pursuant to Federal Rule of Civil Procedure 41, to the dismissal of Plaintiff's claims with respect to the '107 Patent. *See* Dkt. 62.

3

step test articulated in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 537 U.S. 208 (2014), used to determine patent eligibility under 35 U.S.C. § 101. At step one, it held that the '107 Patent is "not directed to the creation of something physical," but, "[i]nstead, they are predicated on presenting results of data collection and analysis," which "resides squarely in the realm of abstract ideas." *Match Grp., LLC et al.*, 2019 WL 3304704, at *2. Upon finding the claims to involve an unpatentable abstract idea, the court held at the second step that the '107 Patent claims falls "well below the threshold that the Federal Circuit has established for an inventive concept" because "NetSoc makes no suggestion – in the patent or in its briefing – that its system for collecting participant data, analyzing it, and presenting it to the users requires anything other than conventional computer hardware." *Id.* at *2-3.

Following the Northern District of Texas's decision, Plaintiff acknowledged that its claims based on the '107 Patent in other pending actions were now collaterally estopped. *See, e.g.*, Dkt. 88 ("Plaintiff agrees that collateral estoppel may be applied to assertions of infringement of the '107 patent in light of the Texas Decision[.]"). Nonetheless, Plaintiff disputes that the Texas court's decision was "dispositive as to the claims of the '591 patent[.]" Dkt. 50; *see also* Dkt. 83 ("Plaintiff . . . disagrees that collateral estoppel would apply to claims of infringement on any other NetSoc patent, including the '591 patent and the '344 patent.").

On September 6, Oath filed the present motion to dismiss the SAC. It first contends that Plaintiff is collaterally estopped from asserting infringement claims based on the '591 Patent in light of the Northern District of Texas's decision. Oath also argues, in the alternative, that the '591 Patent does not satisfy 35 U.S.C. § 101 and Plaintiff's claims are not sufficiently plead under Federal Rule of Civil Procedure 12(b)(6).

4

## II. Summary of the Relevant Patents

On December 22, 2015, the '591 Patent, entitled "Method and System for Establishing and Using a Social Network to Facilitate People in Life Issues," was issued by the United States Patent and Trademark Office (the "USPTO"). Dkt. 44, Ex. A. The patent's abstract describes its invention as follows:

> Embodiments described herein provide numerous applications and implementations of a social network to facilitate individuals to resolve various life issues. These issues may include issues that arise when individuals or families relocate, including logistic problems, assimilation of family members in a community, and roommate pairings. As will be described, embodiments described herein greatly facilitate corporations in relocating their employees logistically, and also assist employees and their families with life issues that may determine whether the employees' relocation will be a success.

Dkt. 44, Ex. A.

The '591 Patent contains 8 claims. Claim 1 describes "[a] method for establishing a social network," which is – broadly speaking – "compris[ed]" of (1) "maintaining a list comprising a plurality of participants," (2) "presenting a user with a plurality of categories from which the user may make a selection of a category," (3) "receiving an electronic communication from the user for an unidentified respondent" and "sending the inquiry to the selected one or more participants," (4) "receiving a response to the inquiry" and "publishing at least a portion of the response," and (5) "tracking feedback for each of the selected one or more participants based at least in part on the published portion of the response." *Id.* Claims 2-4 – the dependent claims – provide specifications for the method described in Claim 1. Claim 5 then describes the system – "[a] non-transitory computer-readable medium that stores instructions which can be executed by one or more processors to perform operations compris[ed]" – to implement the method described in Claim 1. *Id.* Claims 6-8 – dependent claims – provide specifications for the system explained in Claim 5.

On May 22, 2018, the USPTO issued the '107 Patent, also entitled "Method and System for Establishing and Using a Social Network to Facilitate People in Life Issues." *See* Dkt. 1, Ex. A. The '107 Patent is listed as a continuation of the '591 Patent. It contains 11 claims, with Claim 1 describing a similar "method for establishing a social network" that is "compris[ed]" of (1) "maintaining a list comprising a plurality of participants," (2) "presenting a user with an interface from which the user makes a selection of a category," (3) "displaying, for the user, some of the information associated with each of the multiple participants from the plurality of participants which match the selection of the category by the user," (4) "enabling the user to send an inquiry message to one or more of the multiple participants," and (5) "tracking a response time of each of the one or more participants who received the message from the user." *Id.* Like the '591 Patent, Claims 2-5 further specify Claim 1's method, and Claims 5-8 describe a system – here, "[a] computer system" – for implementing the method described in Claim 1. *Id.* The abstract describing the '107 Patent is identical – word-for-word – as the one in the '591 Patent. Additionally, like the '591 Patent, the '107 Patent includes "10 Drawing Sheets" to illustrate the concept. These "10 Drawing Sheets" are identical to those enclosed in the '591 Patent. *Compare id., with* Dkt. 44, Ex. A.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885 (JPO), 2017 WL 74729, at *3 n.4 (S.D.N.Y. Jan. 4, 2017) ("[T]he plausibility pleading requirement of *Twombly* and *Iqbal* became the operative standard for pleading patent infringement."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether the complaint has sufficiently "cross[ed] the federal court's threshold," *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011), the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citation omitted).

## DISCUSSION

Oath raises several arguments in its motion to dismiss the SAC. As a threshold issue, Oath contends that Plaintiff's infringement claims based on the '591 Patent are collaterally estopped by the Northern District of Texas's decision. In particular, Oath argues that collateral estoppel bars Plaintiff from raising claims based on the '591 Patent because the Texas court already ruled that "the substantively identical '107 Patent claims [are] unpatentable subject matter under 35 U.S.C. § 101." Def.'s Mot. at 11. Noting that the '591 Patent "uses only slightly different language to describe substantially the same invention," Oath asserts that Plaintiff is thus "estopped from asserting the '591 Patent." *Id.* Because the Court agrees, it grants Oath's motion on collateral estoppel grounds and does not address its remaining arguments.

### I. Legal Standard for Collateral Estoppel

"The doctrine of collateral estoppel, which is also known as issue preclusion, bars a party from re-litigating in a second proceeding a factual or legal . . . issue that has already been decided against him in a prior proceeding." *Ferring B.V. v. Serenity Pharm., LLC*, 391 F. Supp. 3d 265, 281-82 (S.D.N.Y. 2019). For collateral estoppel to apply, four elements must be satisfied: "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a

7

full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018).[5] A district court has broad discretion "in determining whether or not collateral estoppel should apply in a given case." *Id.*

Although collateral estoppel principles apply equally in patent cases, "patent cases undoubtedly raise unique concerns," in significant part because of the "economic considerations relating to the costly relitigation of patent validity issues." *Medinol Ltd. v. Guidant Corp.*, 341 F. Supp. 2d 301, 319-20 (S.D.N.Y. 2004). For this reason, "collateral estoppel may apply to patent claims that were not previously adjudicated, because the 'issues litigated, *not* the specific claims around which the issues were framed are determinative.'" *Id.* at 314. As one court explained:

> There is no reason to employ a different approach in a patent context by looking to the claims litigated instead of to the issues that were decided. Courts have long recognized that the claims of a patent may be repeated and duplicated, varying one from the other only in minor details.

*Bourns, Inc. v. United States*, 537 F.2d 486, 651-52 (Ct. Cl. 1976). Thus, "[i]n patent validity cases, the 'first consideration' in the collateral estoppel analysis is whether the issues of invalidity common to each action is substantially identical." *Abbvie Inc. v. Kennedy Tr. for Rheumatology Research*, No. 13-CV-1358 (PAC), 2014 WL 3360722, at *3 (S.D.N.Y. July 9, 2014).

---

[5] "Because the application of collateral estoppel is not a matter within the exclusive jurisdiction of [the Federal Circuit], ... [t]he law of the circuit in which the district court sits" – here, the Second Circuit – "controls the questions of whether collateral estoppel applies." *Ferring B.V.*, 391 F. Supp. at 282. Nonetheless, "for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed Cir. 2013).

8

## II. Whether Collateral Estoppel Applies in This Litigation

Plaintiff is not permitted to relitigate "an issue of law or fact actually litigated and decided" by another court. *Orenshteyn v. Int'l Bus. Machs., Corp.*, 979 F. Supp. 2d 448, 451 (S.D.N.Y. 2013). Because the Northern District of Texas held that the '107 Patent claims were directed to ineligible subject matter under § 101, the question is "whether th[ose] assertions of claims for" the '107 Patent are "patentably indistinct from those" presented here regarding the '591 Patent. *Purdue Pharma L.P. v. Ranbaxy Inc.*, No. 10-CV-3734 (SHS), 2012 WL 3854640, at *3 (S.D.N.Y. Sept. 5, 2012).

### A. Three of the Four Collateral Estoppel Elements Are Easily Satisfied

As an initial matter, there is no dispute that three of the doctrine's requisite elements are met here. For collateral estoppel to apply in this action, the Court would have to find that the Northern District of Texas "actually decided" the '107 Patent claims' validity, Plaintiff had a "full and fair opportunity" to litigate that matter in that court, and the court's § 101 ruling was a necessary part of its final judgment to dismiss the case. *Flood*, 904 F.3d at 236.

Following the Northern District of Texas's decision, Plaintiff conceded – in this action and in the related cases that were also before this Court – that any of its pending claims based on the '107 Patent were collaterally estopped. *See, e.g.*, Pl.'s Opp. at 3 (stating that it "agrees that collateral estoppel applies to assertions of infringement of the '107 patent"); *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262, Dkt. 94 (S.D.N.Y. Sept. 16, 2019) ("Plaintiff agrees that collateral estoppel applies to assertions of infringement of the '107 patent[.]"). By agreeing that collateral estoppel applied to any claims involving the '107 Patent, Plaintiff thus acknowledged – albeit, implicitly – that the Northern District of Texas actually decided the question of the '107 Patent's validity under § 101, that the opportunity to fully litigate that question in that court was

9

provided, and that the ruling was a necessary part of the court's final judgment. Based on this concession, the Court assumes for purposes of its own collateral estoppel analysis that these three elements are met.[6]

Accordingly, the remaining inquiry as to collateral estoppel is only whether "the issues in both proceedings [are] identical." *Flood*, 904 F.3d at 236. In other words, the relevant question is whether the Northern District of Texas's conclusion that the '107 Patent was ineligible under § 101 also constitutes an adjudication of the issue now before this Court – that is, whether the '591 Patent is ineligible under § 101.

### B. Whether the '107 Patent and the '591 Patent Are Substantially Similar

Generally, issue-preclusion analysis requires resolving whether an issue decided in a prior proceeding is "identical" to one currently presented. *Flood*, 904 F.3d at 236. Patent cases, however, differ slightly. Recently, the Federal Circuit explained:

> [P]recedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply. If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies.

*Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013); *see also Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt.*, 778 F.3d 1311, 1319 (Fed. Cir. 2015) ("Complete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion."). It is thus not determinative that the '107 Patent and '591 Patent claims are not identical. The Court, instead, must decide whether the two patents are "substantially similar" such that the Northern District of Texas's § 101 invalidity analysis would not be "materially alter[ed]." *Ohio Willow Wood Co.*, 735 F.3d at 1342; *see also Medinol Ltd.*, 341 F. Supp. 2d at

---

[6] Although Plaintiff appealed the Northern District of Texas's decision, *see* Dkt. 82, that has no effect on the collateral estoppel analysis. *See Miller v. Garrett*, 695 F. Supp. 740, 747 n.4 (S.D.N.Y. 1988) ("The pendency of an appeal . . . is irrelevant to a determination of whether a judgment is final for collateral estoppel purposes.").

10

319-20 (explaining that collateral estoppel analysis in patent cases focuses on "the 'issues litigated, *not* the specific claims around which the issues were framed").

Oath asserts that, "given the extreme similarity of the '107 Patent and '591 Patent claims," this final element is also satisfied. Def.'s Mot. at 11. After comparing the two patents' claims and reviewing the pleadings and Plaintiff's statements in this action, the Court agrees. Both the '107 Patent and the '591 Patent in substance claim invention of the same method of connecting users to facilitate resolving life issues. Because "the differences between the unadjudicated patent claims and adjudicated patent claims" are insignificant, they would have no material effect on the Northern District of Texas's invalidity analysis and thus the issue of the '591 Patent claims' eligibility under § 101 has already been addressed and resolved.

### 1. Consideration of the Patents

"To assess the identity of th[e] issues, it is convenient to compare the adjudicated and unadjudicated claims." *Bourns, Inc.*, 537 F.2d at 493. Here, comparing the '107 Patent and the '591 Patent claims illustrates that the two are "patentably indistinct." *Purdue Pharma L.P.*, 2012 WL 3854640, at *3.

As a preliminary matter, the '107 Patent and '591 Patent have the same title – "Method and System for Establishing and Using a Social Network to Facilitate People in Life Issues" – and identical abstracts and drawing sheets describing the invention. *Compare* Dkt. 1, Ex. A, *with* Dkt. 44, Ex. A. These similarities are not surprising because the '107 Patent is described as a "continuation" of the '591 Patent. *See In re Arunachalam*, 709 F. App'x 699, 703 (Fed. Cir. 2017) (noting, in its collateral estoppel analysis, "that the '566 Patent is a continuation in-part of the '500 Patent with additional disclosures" and that thus the patents' "specific terms remain[] nearly identical").

11

The similarities between the two patents are further evident when evaluating their claims. Claim 1, which is representative of both patents' claims, is illustrative.[7] Indeed, in a July 16, 2019 letter defending its late filing of the SAC and substitution of the patents in the complaint, Plaintiff itself provided the following chart, which was intended to "illustrate the extreme similarity in the independent Claim 1 of the '107 patent as compared to the '591 patent."[8] Dkt. 46.

---

[7] When making patent eligibility determinations, "[a]ddressing each asserted claim in a § 101 analysis is unnecessary when the claims are 'substantially similar and linked to the same abstract idea.'" *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 386 (S.D.N.Y. 2018); *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed Cir. 2017) ("Where . . . claims 'are substantially similar and linked to the same' law of nature, analyzing representative claims is proper." (citation omitted)).

Here, Oath asserts that Claim 1 in both patents is representative. *See* Def.'s Mot. at 11. The Court agrees. After reviewing the claims in both patents, it is evident that "all of the claims are substantially similar and linked to the same abstract idea" described in Claim 1. *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Each one's remaining method claims – claims 2-5 in the '107 Patent and claims 2-4 in the '591 Patent – are "intimately linked to the abstract idea" described in Claim 1 and add nothing of separate patentable significance. *Pers. Beasties Grp. LLC*, 341 F. Supp. 3d at 386. Instead, they only add specifications to the general concept, such as how the user is linked to other participants. *See Quantum Stream Inc. v. Charter Commc'n*, 309 F. Supp. 3d 171, 178 (S.D.N.Y. 2018) ("The dependent claims, in turn, provide at most additional specificity as to the potential attributes of the content, or of the methods of moving such content through generic components."). Plaintiff disputes this, asserting that "the dependent claims are important for patentability." Pl.'s Opp. at 7. It, however, offers no support as to why this is so.

Additionally, while the two patents include differently worded system claims – claims 6-11 in the '107 Patent and claims 5-8 in the '591 Patent – these only provide a means to implement the method described in Claim 1 and do not "add [anything] of substance to the underlying abstract idea." *Alice Corp. Pty.*, 573 U.S. at 226-27. As a court in this district explained, "[w]here . . . the system and method claims 'are grounded by the same meaningful limitations,' they 'will generally rise and fall together.'" *Pers. Beasties Grp. LLC*, 341 F. Supp. 3d at 386. Because none of the claims beyond Claim 1 are "patently distinctive," the Court's analysis focuses on Claim 1 in each patent. *Id.*

[8] By contrast, in a letter filed that same day in *NetSoc, LLC v. LinkedIn Corp.*, No. 18-CV-12215, Plaintiff argued that another of its patents, the '344 Patent, was "materially different than the claims of the '107 Patent" and provided a detailed table "illustrat[ing] the differences between the claims of the '107 patent and the '344 patent." *LinkedIn Corp.*, No. 18-CV-12215, Dkt. 57 (S.D.N.Y. Sept. 16, 2019).

| Claim 1 of the '591 | Claim 1 of the '107 |
|---|---|
| 1. A method for establishing a social network, the method comprising: | 1. A method for establishing a social network, the method being implemented on a network computer system and comprising: |
| maintaining a list comprising a plurality of participants, wherein each participant in the plurality of participants corresponds to one or more individuals, wherein the list also includes information associated with at least one of each participant or the one or more individuals that correspond to each participant; | maintaining a list comprising a plurality of participants, wherein each participant in the plurality of participants corresponds to one or more individuals, wherein the list also includes information associated with at least one of each participant or the one or more individuals that correspond to each participant; |
| presenting a user with a plurality of categories from which the user may make a selection of a category from the plurality of categories; | presenting a user with an interface from which the user makes a selection of a category from a plurality of categories; |
| receiving the selection of the category by the user; | in response to receiving the selection of the category by the user, displaying, for the user, some of the information associated with each of multiple participants from the plurality of participants which match the selection of the category by the user, while shielding contact information associated with each of the multiple participants; |
| in conjunction with the selection of the category, receiving an electronic communication from the user for an unidentified respondent, wherein the electronic communication contains an inquiry of the user; | |
| after receiving the selection of the category by the user, selecting one or more participants from the list to receive the electronic communication, wherein selecting is based at least in part on the selection of the category or the information associated with at least one of each participant or the one or more individuals that correspond to each participant; | wherein displaying some of the information associated with each of the multiple participants is based at least in part on a rating of individual participants in the plurality of participants; |

| Claim 1 of the '591 | Claim 1 of the '107 |
|---|---|
| sending the inquiry to the selected one or more participants; | enabling the user to send an inquiry message to one or more of the multiple participants, while shielding the contact information from the user, the contact information including any messaging identifier that is associated with each of the one or more participants; |
| receiving a response to the inquiry from the selected one or more participants, the response from each of the one or more participants including biographical information about that participant; | tracking a response time of each of the one or more participants who received the message from the user; and |
| publishing at least a portion of the response from each of the selected one or more participants for other users to view, wherein publishing is performed without identifying the user but includes providing biographical information about the participant who provided the response; | updating the rating associated with each of the one or more participants based at least in part on the tracked response time. |
| tracking feedback for each of the selected one or more participants based at least in part on the published portion of the response, including determining a rating from the user for at least one of the selected one or more participants. | |

13

Dkt. 46; *see also* Def.'s Mot. at 12-13 (providing its own table illustrating the similarities between Claim 1 in both patents).

Although there are a few minor differences addressed in more detail below, Claim 1 of the '107 Patent and '591 Patent essentially "use slightly different language to describe substantially the same invention." *Ohio Willow Wood*, 735 F.3d at 1342. In both patents, Claim 1 claims a method for establishing a social network with the goal of connecting people to assist in resolving life issues. To do this, both patents comprise of (1) maintaining a list of participants, (2) presenting a user with a list of categories to choose from, (3) sending an inquiry message to one or more participants regarding the user's inquiry, and (4) tracking that communication by some means. Moreover, both patents employ conventional computer systems to implement this method. That the two patents describe the same concept is further illustrated by how the parties have described the '107 Patent and the '591 Patent in this litigation.

|  | **Plaintiff** | **Oath** |
| --- | --- | --- |
| **'107 Patent** | "The claims of the '107 patent are focused on an application that establishes a social network for use in matching participants to categorical selection of users." Dkt. 56. | "The '107 patent is directed to the concept of connecting a person with an issue that the person wishes to have solved (for example, the need to find a good hotel in Orlando, Florida) to a group of people or companies that may be able to assist with that issue (e.g., a group of people who have previously traveled to Orlando, Florida), and then giving the individual who provided the recommendation feedback on their response." Dkt. 28 at 1 (Def.'s prior motion to dismiss). |
| **'591 Patent** | "The claims of the '591 patent are focused on an application that establishes a social network for use in a matching system where the system can act as an intermediary for the user who sends the inquiry, with content generated by the respondent being associated with the respondent and not the user." Pl.'s Opp. at 11. | "The patent describes matching a 'user' that has an issue with 'participants' in the network (service providers such as other people, organizations, groups, companies, etc.) who may be able to help with the user's issue." Def.'s Mot. at 4. |

In its opposition brief, Plaintiff attempts to highlight differences between the '107 Patent and '591 Patent. It notes that "the user of embodiments of the claims invention of the '591 does not automatically communicate directly with the recipient – the user inquiry is received, the system selects the recipient." Pl.'s Opp. at 7. As such, "the system can act as an intermediary for the user who sends the inquiry," thus giving "the user . . . a level of privacy (because he is not identified), while the respondent is identified." *Id.* at 8. By contrast, it explains that the '107 Patent has "the user select[] the respondent while protecting the identity of those participants who may receive the inquiry from the user, and the user communicates directly to a selected respondent." *Id.* A second difference is that "the 'rating' in each patent is not the same." *Id.* at 8. The '107 Patent "reflects historical information about the participants['] response time," whereas the '591 Patent uses a rating based on "feedback." *Id.* at 8. Oath does not dispute that the patents' claims differ in these two ways. Nonetheless, it argues that this is "slightly different language" that is "not of patentable significance." Def.'s Mot. at 13.

The Court agrees with Oath. "[T]he mere existence of different language in the adjudicated claims . . . and unadjudicated claims" does not preclude applying collateral estoppel. *Ohio Willow Wood Co.*, 735 F.3d at 1342; *see also id.* at 1343 ("[T]he mere use of different words in these portions of the claims does not create a new issue of invalidity."). And while Plaintiff's assertions as to how the '107 Patent and '591 Patent differ are accurate, these differences do not alter the patents in any material way. Rather, the two identified differences are dependent claims that only add limitations or specifications to the method described in Claim 1. *See Soverain Software LLC*, 778 F.3d at 1319-20 (holding that "[t]he additional limitation here – transmitting a hypertext statement over the Internet, rather than over a generic network – does not materially alter the question of the validity of [the] claim"); *Ohio Willow* Wood, 735

15

F.3d at 1343 (concluding that collateral estoppel applies because there was no showing that "the additional limitation would change an invalidity analysis"); *In re Arunachalam*, 709 F. App'x 699, 703 (Fed. Cir. 2017) ("[A]ny differences between the two sets of claims are not material such that those differences would affect the patentability of the challenged claims."); *Quantum Stream Inc.*, 309 F. Supp. 3d at 179 (explaining that "dependent claims [that] at most recite additional specific arrangement of types of generic attributes" do not provide "meaningful" differences for a § 101 inquiry).

Accordingly, because Claim 1 of the '107 Patent and the '591 Patent is representative of both and markedly the same, the "issues of invalidity common to each action [are] substantially identical." *Abbvie Inc.*, 2014 WL 3660722, at *3.

### 2. Review of the Pleadings and Statements Made in This Litigation

The significant similarities between the '107 Patent and '591 Patent are also illustrated by the pleadings in this action. Despite the fact that the FAC asserted that Oath infringed on the '107 Patent and the SAC asserts that Oath infringed on the '591 Patent, the complaints are otherwise identical. Both complaints, for instance, include a table demonstrating how Oath's website and services infringe on Claim 1. They then describe Claim 1 verbatim, alleging that Oath infringed on Plaintiff's patented "method for establishing a social network," which comprises of, in sum, (1) "maintaining a list comprising a plurality of participants," (2) "presenting a user with a plurality of categories from which the user may make a selection," (3) "receiving the selection of the category by the user" and "receiving an electronic communication from the user for an unidentified respondent," (4) then "selecting one or more participants from the list to receive the electronic communication," (5) "sending th[at] inquiry to the selected one or more participants," (6) "receiving a response to the inquiry form the selected one or more

participants," (7) "publishing at least a portion of the response from each of the selected one or more participants for other users to view," and (8) "tracking feedback for each of the selected one or more participants." *Compare* Dkt. 22, *with* Dkt. 44. That Plaintiff chose not to make any substantive edits to the infringement allegations in the SAC, despite asserting a different patent, suggests that Plaintiff itself believed the '107 Patent and '591 Patent describe essentially the same invention.

Additionally, the Court cannot ignore Plaintiff's own statements about the patents' similarities in other filings before this Court. In the July 16 letter, Plaintiff defended its decision to substitute the '591 Patent for the '107 Patent in the SAC based on the fact that "the '107 patent and '591 patent are highly related." Dkt. 46. It further noted the "extreme similarity in the independent Claim 1 of the '107 patent as compared to the '591 patent." *Id.* Plaintiff reasoned that the two patents were so similar because "the '107 patent is a continuation application of the application that issues as the '591 patent." *Id.* In light of these statements, which Plaintiff does not address (or even acknowledge) in its opposition brief, the Court finds it difficult to conclude anything but that the two patents are indeed substantially similar.[9]

As a final matter, the Court notes that Plaintiff has not made any substantive argument against the applicability of collateral estoppel here. Prior to the Texas court's decision on the motion for a new trial in that matter, Plaintiff argued that "this is precisely the type of case where it may be preferable that the Court delay deciding if collateral estoppel applies until at least after the decision on the motion for a New Trial pending in the Northern District of Texas." Pl.'s Opp. at 2; *see also id.* at 3 ("[J]udicial economy is promoted by the Court delaying any collateral

---

[9] Plaintiff's opposition is also telling. It is very similar to Plaintiff's motion for a new trial filed in the Northern District of Texas after the § 101 ruling. *Compare Match Grp., LLC et al.*, No. 18-CV-1809, Dkt. 66 (N.D. Tex. Aug. 19, 2019), *with* Dkt. 71. As Oath notes, the fact that Plaintiff can "re-purpose its briefing from the *Match* case on the '107 Patent" here underscores the ways in which the two patents are highly similar. Def.'s Reply at 1.

17

estoppel decision until after a ruling on the Motion for a New Trial."). Since filing its opposition brief on September 16, 2019, however, the Northern District of Texas denied Plaintiff's motion for a new trial, rendering this argument moot. *See* Dkt. 81.

Next, Plaintiff suggests that the Court should resolve Oath's motion to dismiss and "avoid consideration of collateral estoppel." Pl.'s Opp. at 3. But Plaintiff offers no reasoning as to why the Court should take this approach, which would run counter to the purposes of the collateral estoppel doctrine.

Indeed, it is only after raising these two other arguments that Plaintiff disputes the application of collateral estoppel to its claims based on the '591 Patent at all. *See id.* But like its previous arguments, Plaintiff asserts this only conclusorily. It offers no substantive reasoning either as to why, broadly speaking, the Northern District of Texas's decision lacks preclusive effect or, more specifically, how the '107 Patent and '591 Patent materially differ.

In sum, the Court concludes that the '107 Patent and the '591 Patent are substantially similar or, in Plaintiff's own words, "highly related." Dkt. 46. Both patents claim an invention establishing a social network to connect people to assist with particular life issues. Although there are differences between the two patents' claims, they are minor and thus "do not materially alter the question of invalidity" under § 101. *Ohio Willow Wood Co.*, 735 F.3d at 1342; *see also Control v. Dig. Playground, Inc.*, Nos. 12-CV-6781 (RJS), 12-CV-7734 (RJS), 2016 WL 5793745, at *5 (S.D.N.Y. Sept. 30, 2016) (holding that collateral estoppel applies because one patent is "largely duplicative" of another that has already been ruled invalid). Nor has Plaintiff explained how these minor differences make the '107 Patent and the '591 Patent patentably distinguishable. As such, the Northern District of Texas's conclusion that the '107 Patent was ineligible under § 101 is applicable here as to the '591 Patent, and collateral estoppel applies.

## CONCLUSION

For the foregoing reasons, the Court grants Oath's motion to dismiss on collateral estoppel grounds. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 63 and close this case.

Dated: January 24, 2020
New York, New York

_____
RONNIE ABRAMS
United States District Judge